UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO

| | |
|---|---|
| GIBRALTAR P.R., INC. | * |
| Plaintiff | * |
| v. | *   Civ. No. 97-2409 (PG) |
| Q-SYSTEMS INTERNATIONAL, INC. | * |
| Defendant | * |

## OPINION & ORDER

Pending before this Court is defendant's motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), (2) and (3). (Dkt. #5). For the reasons hereunder stated, the Court finds unnecessary a ruling on the issue of improper venue, but shall address the arguments on subject matter and *in personam* jurisdiction.[1]

### Factual Background

The facts, as alleged in the complaint, are as follows: Plaintiff Gibraltar P.R., Inc., ("Gibraltar") is a corporation organized and existing under the laws of the Commonwealth of Puerto Rico and having its principal place of business in San Lorenzo, Puerto Rico. Gibraltar is engaged, *inter alia*, in the business of manufacturing special protective apparel for the United States Department of Defense.

---

[1] On February 24, 1998, this Court granted plaintiff's attorneys' motion for withdrawal of legal representation (Dkt. #9) and allowed a period of forty-five days for Gibraltar to retain new counsel. Said period expired long ago, and the Court shall not delay its ruling any further.



Civ. No. 97-2409 (PG)                                                                                                                     2.

Defendant Q-Systems International, Inc. ("Q-Systems"), with business offices in Arlington, Texas, manufactures and sells law enforcement equipment.

In September 1996, Edwin Hodges ("Hodges"), President of Q-Systems, and Tom Delahunt ("Delahunt"), an employee of Gibraltar, were engaged in discussions regarding the possibility of the two companies entering into a sort of joint venture that they referred to as a "Teaming Agreement," with respect to a procurement of body armor items that had been announced by the Untied States Army. During their discussions, Delahunt mentioned to Hodges that Gibraltar had a small inventory of Chemical Protective Suits ("the suits") which were "seconds" (*i.e.*, not conforming to the applicable military specification); the suits were left over from a defense contract that had been completed. Hodges, on behalf of Q-Systems, suggested and requested that Q-Systems be allowed to sell the suits for Gibraltar on a consignment basis, and that Gibraltar ship the suits to Q-Systems' Dallas-area address for said purpose. Delahunt, on behalf of Gibraltar, agreed that Q-Systems could attempt to sell the Suits on a consignment basis.

By letter dated October 24, 1996, Hodges confirmed Q-Systems' willingness to accept 8,000 suits on a consignment basis and acknowledged that Q-Systems had 240 days to sell the product. On October 30, 1996, Seth Maxwell, Senior Vice President of Gibraltar, responded by letter leaving the period of time for Q-Systems to sell the suits rather flexible. The suits were then shipped to Q-Systems in November and December of 1996, and were received by Q-Systems on December 10, 1996.

As of April of 1997, Gibraltar had not heard anything with regard to the suits it had sent, and contacted Q-Systems to request that the suits be returned. By letter dated May 15, 1997, Q-Systems responded that there had been a binding agreement that Q-Systems could have 240 days to sell the

AO 72A
(Rev. 8/82)

Civ. No. 97-2409 (PG)                                                                                                  3.

goods, time which had not yet elapsed. Gibralter denied that Q-Systems had a fixed minimum of 240 days to sell the suits. The 240-day period expired on August 8, 1997, and yet Q-Systems has not returned any suits to Gibraltar.

## Discussion

### I. Federal Rule of Civil Procedure 12(b)(1): Lack of subject matter jurisdiction

Subject matter jurisdiction refers to the fact that federal district courts have original jurisdiction of all civil actions between citizens of different States only if the matter in controversy exceeds the sum of $75,000, exclusive of interest and costs. 28 U.S.C. §1332(a)(1).[2] "Litigants cannot confer subject matter jurisdiction by agreement[,]" *American Policyholders Ins. Co. v. Nyacol Prods., Inc.*, 989 F.2d 1256, 1258 (1st Cir. 1993) (citations omitted), nor can they waive it. *Alliance of American Insurers v. Cuomo*, 854 F.2d 591, 605 (2nd Cir. 1988) (citations omitted). The existence of subject matter jurisdiction is of such importance that a Court can raise the issue sua sponte, *id.*, or a party can bring the issue before the Court's attention at any time prior to a final judgment, Fed. R. Civ. P. 12(h)(3), even if it has been previously overruled and is subsequently reasserted. *Abdelnour v. Coggeshall & Hicks*, 287 F.Supp. 135, 137 (D.C.N.Y. 1968).[3]

---

[2] For purposes of this statute, the word "States" in this statute includes Puerto Rico, 28 U.S.C. §1332(d). Of course, Puerto Rico is not a State. *Popular Democratic Party v. Commonwealth of Puerto Rico*, 24 F.Supp.2d 184 (D.P.R. 1998), *mandamus denied*, __ F.3d __ (1st Cir. 1998).

[3] Despite its importance, a dismissal for lack of subject matter jurisdiction is not a decision on the merits, *Prakash v. American Univ.*, 727 F.2d 1174, 1182 n.52 (D.C. Cir. 1984), thus without any res judicata implications except as to the existence or absence of jurisdiction. *Winslow v. Walters*, 815 F.2d 1114 (7th Cir. 1987). On the other hand, for example, a dismissal for failure to state a claim upon which relief can be granted pursuant to Fed.R.Civ.P. 12(b)(6) is a decision on the merits with full res judicata effects. *Id.*

Civ. No. 97-2409 (PG) 4.

>Once a defendant files a Motion contesting the Court's subject matter jurisdiction under Rule 12(b)(1), the burden of establishing jurisdiction falls on the plaintiff. Therefore, if jurisdiction is premised on a federal question, the plaintiff must show that he has brought a claim arising under federal law. Moreover, if jurisdiction is premised on diversity of citizenship, the plaintiff must show complete diversity, and that his claim exceeds the jurisdictional minimum amount. *Rodríguez v. P.L. Industries, Inc.*, WL 430183, 2 (D.Puerto Rico 1999) (citations omitted).[4]

In the case at bar, defendant does not challenge lack of diversity; it points instead to insufficiency in the amount in controversy. Plaintiff asserts that Gibraltar has incurred a loss of at least one-hundred twenty thousand dollars ($120,000.00) as a consequence of Q-Systems' breach of contract, "with the exact amount to be proven at trial." Defendant, on the other hand, asserts that plaintiff's damages add up to no more than twenty-one thousand three hundred dollars ($21,300.00). In support of its estimate for plaintiff's damages, defendant provides copies of two shipping memorandums detailing a total of 10,623 suits being shipped, revealing a cost of only two dollars ($2.00) per suit. This information, which was provided to the Court on January 30, 1998, has not been controverted at any time by Gibraltar but for the allegations in the complaint.

>The rule governing dismissal for want of jurisdiction in cases brought in the federal court is that, unless the law gives a different rule, the sum claimed by the plaintiff controls if the claim is apparently made in good faith. It must appear to a legal certainty

---

[4] "In reviewing a Fed.R.Civ.P. 12(b)(1) motion, the inquiry of the Court is whether or not the challenged pleading sets forth allegations sufficient to demonstrate that the Court has subject matter jurisdiction in the case. In making this determination, the pleadings are to be taken as true and construed in a light most favorable to the party opposing the motion. The Court is not restricted, however, to examining only the pleadings but may review any evidence, including affidavits, to determine any disputed facts upon which the motion or the opposition to it is predicated. Should the pleader allege facts from which jurisdiction may be inferred, the motion must be denied. If there are genuine issues of material fact at issue, a decision must be made on the factual questions before the motion is decided. However, if 'the facts are relatively simple [and] substantially uncontroverted,' the court may rule on a 12(b)(1) motion without pausing to make findings on disputed questions of fact." *Casey v. Lifespan Corp.*, WL 482314, 2 (D.R.I. 1999) (citations omitted).

that the claim is really for less than the jurisdictional amount to justify dismissal. The inability of plaintiff to recover an amount adequate to give the court jurisdiction does not show his bad faith or oust the jurisdiction. Nor does the fact that the complaint discloses the existence of a valid defense to the claim. But if, from the face of the pleadings, it is apparent, to a legal certainty, that the plaintiff cannot recover the amount claimed or if, from the proofs, the court is satisfied to a like certainty that the plaintiff never was entitled to recover that amount, and that his claim was therefore colorable for the purpose of conferring jurisdiction, the suit will be dismissed. *St. Paul Mercury Indemnity Co. v. Red Cab Co.*, 303 U.S. 283, 291 (1938).[5]

It is unclear how much the suits involved were worth in the market at the time that the complaint was filed. Assuming that businesses are rational and that they engage in projects for a profit, production costs are usually lower than their market value. Plaintiff, in its complaint, is talking about the suits' "value." *See* Complaint, Count IV, 29. Defendant's calculation of the items in controversy, however, refers to their "cost." *See* Dkt. #5, Ex. I and II. If we assume that plaintiff would have been unable to sell suits, then its productions costs would have been its direct losses.[6] But had plaintiff been able to sell them, then its losses would have been not only the production cost, but lost profits as well. Since we have no way of ascertaining the degree of marketability of said suits at the time that plaintiff's complaint was filed, the Court cannot conclude with legal certainty that the $120,000 amount alleged by Gibralter was made in bad faith. Hence, Q-Systems' motion to dismiss for lack of subject matter jurisdiction shall not be given a hospitable welcome in this forum.

---

[5] In *St. Paul Mercury*, the Supreme Court also announced that "[e]vents occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit do not oust jurisdiction." This rule was reaffirmed by said forum in *Carnegie-Mellon University v. Cohill*, 484 U.S. 343 (1988) using as rationale the old version of 28 U.S.C. §1447(c). However, with the 1988 amendments to §1447(c), this portion of *St. Paul Mercury*'s holding is no longer valid law. *See Bailey v. Wal-Mart Stores, Inc.*, 981 F.Supp. 1415, 1416 (N.D.Ala.1997).

[6] Economists would add opportunity costs as well, but for our purposes, it is unnecessary to swim those waters.

Civ. No. 97-2409 (PG)                                                                                      6.

## *II. Federal Rule of Civil Procedure 12(b)(2): Lack of in personam jurisdiction*

Federal courts entertaining cases based on diversity of citizenship "are for common-law purposes courts of the state in which they sit . . . ." R.Leflar, L. McDougal & R.F Felix, *American Conflicts Law* 194 (4th ed. 1986).[7] "Thus, in diversity cases, a federal court cannot exceed the jurisdictional reach of the courts of the forum in which they sit." *American Express Int'l, Inc. v. Mendez-Capellan*, 889 F.2d 1175, 1178 (1st Cir.1989) (citation omitted).

Specifically, "[i]n a diversity case, . . . the district court's personal jurisdiction over a non-resident defendant is governed by the forum's long-arm statute." *Mangual v. General Battery Corp.*, 710 F.2d 15, 18 (1st Cir. 1983) (citation omitted). *See also Boit v. Gar-Tec Prods., Inc.*, 967 F.2d 671, 675 (1st Cir. 1992). Puerto Rico's long-arm statute is embodied in Rule 4.7 of the Commonwealth's Rules of Civil Procedure, providing as follows:

> (a) Whenever the person to be served is not domiciled in Puerto Rico, the General Court of Justice shall take jurisdiction over said person if the action or claim arises because said person:
> (1) Transacted business in Puerto Rico personally or through an agent; or
> (2) Participated in tortious acts within Puerto Rico personally or through his agent;[8] or
> (3) Was involved in an automobile accident while driving a motor vehicle in Puerto Rico personally or through his agent; or
> (4) Was involved in an accident in Puerto Rico while operating, personally or through his agent, a freight or passenger transportation business in Puerto Rico, between Puerto Rico and the United States or between Puerto Rico and a foreign

---

[7]This was a natural result of *Swift v. Tyson*, 41 U.S. (16 Pet.) 1 (1842) being overruled by *Erie R.R. v. Tompkins*, 304 U.S. 64 (1938).

[8]"Rule 4.7(a)(2) allows jurisdiction 'where a defendant who has availed himself of the laws and benefits of Puerto Rico commits a tortious act within or without the Commonwealth that he knows or reasonably should know will cause injury within Puerto Rico.'" *Villa Marina Yacht Sales, Inc., v. Hatteras Yachts*, 915 F.2d 7, 10 (1st Cir. 1990) (citation omitted).

Civ. No. 97-2409 (PG) 7.

> country, or if, in the operation of said business, an accident occurs outside Puerto Rico and the contract had been executed in Puerto Rico; or
> (5) Owns, uses or possesses, personally or through his agent, real property in Puerto Rico.

P.R. Laws Ann. tit. 32, app. III, Rule 4.7(a)

The facts in the case at hand do not even hint a reason for this Court to exercise personal jurisdiction over Q-Systems. Gibraltar took the initiative to contact Q-Systems in Texas. Gibraltar representatives then traveled to Texas and negotiated the deal with Q-Systems in Texas. The suits in controversy were shipped to Texas. Furthermore, the suits, if any remain in Q-Systems' inventory, are still in Texas. No evidence has been offered to suggest that Q-Systems intended to sell or actually sold these suits in Puerto Rico or that Q-Systems' personnel or agents visited Puerto Rico on a business trip to seal the deal with Gibraltar. Nor is there any evidence that Q-Systems owns property in Puerto Rico, has committed tortious acts in Puerto Rico or has been involved in an accident in Puerto Rico. The only possible connection with Puerto Rico that Gibraltar can allege is that the suits were manufactured in Puerto Rico and that part of the negotiations were carried out via correspondence written by Gibraltar's representatives in Puerto Rico and eventually mailed to Q-Systems. These contacts, however, are so thin that it would be unfair to drag Q-Systems into this forum.

> We have noted that, under Puerto Rico law, there is a three-pronged test to determine whether in personam jurisdiction can be obtained under Rule 4.7(a). The test provides that: One, there must be an act done or consummated within the forum by the nonresident defendant.... Two, the cause of action must arise out of the defendant's action within the forum state. Three, the activity linking defendant, forum and cause of action must be substantial enough to meet the due process requirements of "fair play and

Civ. No. 97-2409 (PG) 8.

substantial justice." *Pizarro v. Hoteles Concorde Int'l*, 907 F.2d 1256, 1258 (1st Cir. 1990) (citations omitted).[9]

Gibraltar, who has the burden of establishing that this forum has personal jurisdiction over Q-Systems, *Rodriguez v. Fullerton Tires Corp.*, 115 F.3d 81, 83 (1st Cir. 1997), has failed to persuade the Court that any of the three prongs of the test described above has been satisfied.

### Conclusion

Federal courts have been created as forums of limited jurisdiction, and their parameters, "whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978). Wherefore, due to this Court's lack of personal jurisdiction over Q-Systems, defendant's motion to dismiss is hereby **GRANTED** and the case at bar shall be **DISMISSED**.

**IT IS SO ORDERED**.

San Juan, Puerto Rico, September 2, 1999.

JUAN M. PEREZ-GIMENEZ
U. S. District Judge

---

[9]Since "Puerto Rico's 'long-arm' rule permits the exercise of jurisdiction to the full extent of constitutional authority," *Vencedor Mfg. Co. v. Gougler Indus., Inc.*, 557 F.2d 886, 889 (1st Cir. 1977) (citations omitted), a word is warranted as to the breadth of its scope. "The due process clause of the Constitution requires that before a defendant can be brought into a forum's court, two conditions must be met. First, the defendant must have purposely established 'minimum contacts' with the forum such that he can reasonably anticipate being haled into that forum's court. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1984) (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 320 (1945)); *Keds v. Renee International Trading Corp.*, 888 F.2d 215, 219 (1st Cir.1989). Second, if such contacts exist, the exercise of personal jurisdiction over the defendant must comport with 'fair play and substantial justice.' *Burger King Corp.*, 471 U.S. at 476 (1984) (quoting *International Shoe Co.*, 326 U.S. at 320); *Keds*, 888 F.2d at 219-20." *U.S.S. Yachts, Inc. v. Ocean Yachts, Inc.*, 894 F.2d 9 (1st Cir. 1990). Plaintiff has not shown that the "minimum contacts" requirement has been fulfilled.